THE NORTHWESTERN LOAN AND INVESTMENT ASSOCIA-
TION *v.* McPHERSON ET AL.

[No. 2,854.    Filed June 7, 1899.    Rehearing denied Nov. 14, 1899.]

MECHANICS' LIENS.—*Foreclosure.*—*Parties.*—Section 5299 Horner 1897,
relative to the foreclosure of mechanics' liens, does not authorize a
joinder of plaintiffs whose claims and interests are several, but since
the statute authorizes the consolidation of such actions by the
court, available error cannot be predicated upon the action of the
court in overruling a demurrer to a complaint in which several me-
chanics and material men joined, where the claims were stated
severally, and the finding and judgment were several as to each
claimant.    *pp. 251, 252.*

SAME.—*Failure to Record Notice of Lien.*—*Intervening Mortgage.*—
Where notice of intention to hold a lien is filed by a mechanic or
material man as provided by law, the failure of the recorder to
record it in the miscellaneous record, as required by §5296 Horner
1897, will not defeat the priority of the lien as against the holder of
an intervening mortgage.    *pp. 252-254.*

SAME.—*Mortgages.*—*Priority.*—Mechanics' liens relate back to the
time when the work was commenced, or the materials were begun
to be furnished, and a mortgage does not gain priority over a lien
by reason of the fact that it was executed and recorded prior to the
filing of the notice of the mechanic's lien.    *p. 254.*

SAME.—*Complaint.*—*Special Finding.*—*Description of Real Estate.*—
*Variance.*—A complaint in an action to foreclose a mechanic's lien
described the lots as 94 and 95 in the town of Kewanna, and the
findings showed that the materials were furnished for and the
work done on buildings erected on lots 94 and 95 in A. D. Toner's
addition to the town of Kewanna.  *Held,* not to constitute a fatal
variance, since the complaint could have been amended to show
that there were no lots in the town with duplicate numbers.  *p. 255.*

SAME.—*Notice.*—*Lien on Two Lots.*—Where material was furnished
and labor performed in the construction of a house and barn,
the barn being constructed on a lot adjoining that on which the
house stood, both lots belonging to the same person, in the same
inclosure, and used together as constituting the home residence of
the owner, a single notice of a mechanic's lien against the two lots
was sufficient.  *pp. 255, 256.*

From the Fulton Circuit Court.  *Affirmed.*

*De Witt C. Justice, George W. Holman* and *Rome C. Stephenson,* for appellant.

*Enoch Myers,* for appellees.

Comstock, C. J.—This suit was instituted by appellees McPherson and Ralston (dealers in paints and oils), John W. Long (lumber dealer), Rufus Blair and Philip Anderson (laborers), upon a complaint in one paragraph against appellees Lewis C. Mills and Rachel A. Mills, his wife, to foreclose separate mechanics' liens. The appellant was made defendant, the complaint alleging that it was an inferior mortgagee. Appellant filed its cross-complaint against all the appellees for the foreclosure of its mortgage as a superior lien. The court made a special finding of facts and stated conclusions of law thereon, in which it held appellant's lien to be junior to that of appellees. To the conclusions of law, the appellant at the proper time excepted. As stated by appellant's counsel, the assignment of errors brings in question (1) the right of appellee to maintain a joint action; (2) the effect of a failure to record the notice of intention to hold a lien in the miscellaneous record of the recorder's office (said record having been made in the mechanics' lien record); (3) the variance between the property described in the notices and that described in the special finding; (4) the effect of a single notice of lien against two lots for work and material to both. These questions will be considered in the foregoing order.

The action, as stated, is by several material men and mechanics. They united in the complaint in a single paragraph. The claim of each is separately stated.

In 13 Ency. of Pl. and Pr., p. 950 and 951, it is stated that "in the absence of statutory authority, lien claimants cannot unite in a suit to foreclose, unless jointly interested and jointly entitled to a lien on the property." Citing *Bush* v. *Connelly,* 33 Ill. 447; *Harsh* v. *Morgan,* 1 Kan. 293. It is further stated on the same page, "But when authorized by statute, claimants whose claims are several,

and who are without any community of interest in the claims themselves may unite in an equitable action to establish and enforce the liens, or any one of them may file a bill on his own claim, making the others defendants." Citing *Barber* v. *Reynolds*, 33 Cal. 497; *Longest* v. *Breden*, 9 Dana (Ky.) 141; *Treat Lumber Co.* v. *Warner*, 60 Wis. 183, 18 N. W. 747.

The statute in this State as to parties in actions for foreclosure of mechanics' liens, being §5299 Horner 1897, is as follows: "In such actions, all persons whose liens are recorded as herein provided may be made parties, and issues may be made up, and trials had, as in other cases; and the court may, by judgment, direct a sale of the land and building for the satisfaction of the liens and costs; such sale to be without prejudice to the rights of any prior incumbrancer, owner, or other persons not parties to the action. If several such actions be brought by different claimants, and be pending at the same time, the court may order them to be consolidated."

The complaint and the special findings show that neither appellees McPherson and Ralston nor either of the other plaintiffs had an interest in the claim of any other; that each performed labor and furnished material, and that each was entitled to separate relief. While claimants having several interests may be made defendants, we are of the opinion that the statute does not authorize a joinder of plaintiffs whose claims and interests are several. *Martin* v. *Davis*, 82 Ind. 38; *McGrew* v. *McCarty*, 78 Ind. 496. Had separate actions been brought by appellees, the court could have properly consolidated them, and as the claims were stated severally, and the finding and judgment several as to each plaintiff, we cannot see that appellant was deprived of any right, or was in any way prejudiced by the action of the court in overruling the demurrer to the complaint. See §348 Burns 1894, §345 Horner 1897.

Under the second question discussed, appellant argues that

as the special findings show that the notices of intention to hold a lien were never recorded in the miscellaneous record as required by the statute, that the lien sought to be acquired could not operate against appellant's mortgage, which was executed and recorded prior to the filing of these notices by appellees. The claim is based upon the proposition that the claims sought to be enforced are purely statutory, and that claimants must bring themselves within the terms of the statute. Section 5205 Horner 1897, requires any person wishing to acquire a lien to file a notice of his intention to do so within sixty days after performing the work or furnishing labor to hold such lien. Section 5206 Horner 1897, makes it the duty of the recorder to record such notice in the miscellaneous record book. This section provides that all liens so created shall relate to the time when the mechanic or other person begun to perform the labor or to furnsh the materials, and shall have priority over all liens suffered or created thereafter except the liens of other mechanics and material men, as to which there shall be no priority. Under the decisions of our Supreme Court, appellees acquired a lien upon the property by filing notice of their intention with the recorder of Fulton county. The recorder failed to record it in the proper record, but this did not defeat the lien. *Wilson* v. *Logue,* 131 Ind. 191; *Adams* v. *Shaffer,* 132 Ind. 331; *Adams* v. *Buhler,* 131 Ind. 66; *Wilson* v. *Hopkins,* 51 Ind. 231; *Leeper* v. *Myers,* 10 Ind. App. 314.

The question here is one between two lien holders. The lien of one is recorded, the other not, for "the recording of an instrument is effective only when made by the proper officer in the mode prescribed by law," *Adams* v. *Buhler, supra, Gilchrist* v. *Gough,* 63 Ind. 576, *State* v. *Davis,* 96 Ind. 539, *Smith* v. *Lowry,* 113 Ind. 37, and did the right to a lien depend upon the record of these instruments, we would have to hold that appellees had no claim as against appellant. It is conceded by appellant's learned counsel that under the decisions of the Supreme Court of this State, the

filing of the notice secures the lien as between the owner and the lien claimant, but it is denied that the lien can be thus obtained as against an innocent third party for value. This precise question, so far as we are advised, has not been passed upon in this State. The wording of the statutes of the various states upon the subject of mechanics' liens is dissimilar, and reported cases in which they are construed do not greatly aid us. It seems to us, however, as reasonable, that when a mechanic or laborer does all that the statute requires him to do, he is entitled to whatever right the statute gives as against any one. He is required to file his notice for record with the recorder of the county; there his duty ends. Our Supreme Court has held that from that time the lien takes effect. We cite in this connection *Tousley* v. *Tousley*, 5 Ohio St. 78; *Mutual Ins. Co.* v. *Dake*, 87 N. Y. 257; *Bedford* v. *Tupper*, 30 Hun 174; *Merrick* v. *Wallace*, 19 Ill. 486; *Woods' and Brown's Appeal*, 82 Pa. St. 116; *Brooke's Appeal*, 64 Pa. St. 127.

The liens of appellees, in whose favor liens were declared, relate to the times when the work was commenced or the materials begun to be furnished. According to the findings, the notices were not filed until after the mortgage was recorded, but McPherson and Ralston's lien relates to April 13, 1896; Long's lien to March 26, 1896; both prior to the date of the execution of appellant's mortgage. Where one acquires a lien on property with knowledge of the purposes to which such property may be employed by the owner, and that under the statute it may be subjected to other acquired liens in favor of laborers and material men, the statute under which such after acquired liens may be created forms a part of the mortgage, and the mortgage is subject to such statutory lien as may thereafter attach to such property. *Thorpe Block, etc., Assn.* v. *James*, 13 Ind. App. 522; *Jenckes* v. *Jenckes*, 145 Ind. 624; *Wayne, etc., Assn.* v. *Moats*, 149 Ind. 123; *Deming-Colborn, etc., Co.* v. *Union Nat., etc., Assn.*, 151 Ind. 463, 467. The court declared a prior lien on the

buildings only in favor of appellees, and gave to appellant its priority as to the lots. In view of the facts found, and the law, it is doubtful whether the appellant occupies the position of an innocent mortgagee without notice, but, in the view taken, this question is immaterial.

As to the third proposition discussed, viz., the variance between the property described in the special findings and in the notice, there is not necessarily a variance. The findings show that the materials were furnished for, and the work done on, buildings erected on lots ninety-four and ninety-five in A. D. Toner's addition to the town of Kewanna. The notices described the lots ninety-four and ninety-five in the town of Kewanna. It does not appear that appellant was misled by the description. The court will not presume that there were duplicate numbers of lots in Kewanna, and had the finding followed the language of the notice, it would have been sufficient for the purpose of identification. The complaint could have been amended to show that there were no lots in the town of Kewanna with duplicate numbers, and will be treated by the court as so amended. *White* v. *Stanton,* 111 Ind. 540; *Dalton* v. *Hoffman,* 8 Ind. App. 101; *Mc-Namee* v. *Rauck,* 128 Ind. 59.

As to the fourth and remaining question discussed, we are of the opinion that the single notice of liens against the two lots was sufficient. The complaint avers that the two lots constitute "a single building site." The findings show that on the first day of March, 1896, and from thence till now, Rachel A. Mills was the owner of lots ninety-four and ninety-five in A. D. Toner's addition to the town of Kewanna, in Fulton county, Indiana; that lot ninety-four is situated at the corner of Aurora and Toner streets, and with a front on Aurora street of sixty-three feet, and depth on Toner street of 148 feet; that lot ninety-five lies immediately west of lot ninety-four, fronting also on Aurora street, and sixty-three feet wide, with depth of 148 feet. Along the west side of lot ninety-five is an alley, and an alley also on the

north end of both lots. These lots are ordinary sized lots in the town of Kewanna, and situated on residence streets in said town. Lewis C. Mills is the husband of Rachel A. Mills. On or about the 15th day of March, 1896, Lewis C. Mills began the erection of a dwelling-house on lot ninety-four, near the intersection of Aurora street and Toner street, the east limit of said dwelling being situated about eight feet from Toner street, and the south limit of said building being about ten feet from Aurora street, and the west limit of said building being about fifteen feet east of the west line of said lot ninety-four.

While said dwelling-house was in process of erection, Lewis C. Mills began the erection of a small barn or stable on the extreme west side of lot ninety-five at the corner of said lot ninety-five and Aurora street, width of fourteen feet, with a shed on the east side of ten feet front by twenty-four feet in depth along the alley. The erection of the house was begun before the erection of the barn was contemplated, but some time before the house was completed the barn was commenced, and from that time work went on, both on the house and barn, and both of them were substantially finished at the same time. The dwelling and stable are not physically connected with each other, and their nearest limits are thirty feet apart, but are used together as constituting the home residence of Lewis C. Mills and Rachel A. Mills. Before the house was built, Lewis C. Mills had erected a fence across lots ninety-four and ninety-five from east to west, near the center of said lots, and around the entire premises. The house and barn were found to be in the same inclosure, thirty feet apart, constituting the home residence of Lewis C. Mills and Rachel A., his wife. The court finds that work was done on, and materials furnished for, both dwelling and barn without specifying the particular value thereof upon each structure.

The question, we think, is decided adversely to appellant's claim in the *Premier Steel Co.* v. *McElwaine-Richards, etc.,*

*Co.*, 144 Ind. 614, to which case, and the authorities there cited, we refer. See, also, *Crawford* v. *Anderson*, 129 Ind. 117. We find no error for which the judgment should be reversed. Judgment affirmed.

Henley and Wiley, JJ., dissent.

## DISSENTING OPINIONS.

HENLEY, J.—Section 5299 Horner 1897, does not authorize several lien holders to join in an action to foreclose. The question is raised by the demurrer for want of facts. *Jones, Treas.*, v. *Rushville Nat. Bank*, 138 Ind. 87. It is not contended that there is any community of interest between appellees such as would authorize them jointly to prosecute this action. The error in overruling the demurrer to the complaint was such a palpable violation of the law of pleading and practice as established by the decisions of the Supreme Court in this State that the cause for this reason alone ought to be reversed. *Jones, Treas.*, v. *Rushville Nat. Bank, supra*; *Martin* v. *Davis*, 82 Ind. 38; *Stephenson* v. *Martin*, 84 Ind. 160; *Pennville Nat. Gas. Co.* v. *Thomas*, 21 Ind. App. 1.

---

WILEY, J.—I concur in the dissenting opinion of Henley, J. There is, however, another reason why, in my judgment, the conclusion reached by the trial court is erroneous, and that is there is such a variance between the allegations of the complaint and the facts specially found, as to the description of the real estate, that appellees could not recover. This court cannot say that lots ninety-four and ninety-five, in the town of Kewanna, are the same as lots ninety-four and ninety-five in Toner's addition to the town of Kewanna,