GARY-HOBART SAVINGS AND LOAN ASSOCIATION *v.* STRONG.

[No. 14,723. Filed May 18, 1934. Rehearing denied November 24, 1934.]

*Oscar B. Thiel* and *Merritt D. Metz*, for appellant.

*George E. Hershman* and *Ray C. Hedman*, for appellee.

KIME, J.—Appellee, upon solicitation of agents of appellant, paid to appellant, by check $250.00 and contemporaneously therewith, executed the following:

"The undersigned hereby applies for membership in Gary-Hobart Savings & Loan Association, Rural, and agrees to be bound by the rules, regulations and by-laws of the Association, and agrees to purchase a certificate of membership on the following basis: (No. 287)

"I agree to pay to the said Association in cash with my application the sum of $250.00 as a membership fee, and I further agree to deposit monthly the minimum sum of $25.00 until such deposits together with the dividends declared by the Association shall amount to $5000.00.

"I understand that I have the privilege (Gary Office) of withdrawing all or any part of the *deposits* made on account thereof *(excepting the membership fee)* together with all dividends declared thereon to date of such withdrawal.

"I further understand that I will receive 6½ per cent on my deposits before any dividend can be paid on the permanent capital of the Association, and I will participate in half of all earnings above 6½ per cent and that I will not be charged with any

fines or penalties because of delinquent payments.
Name: Harry H. Strong,      Address R. F. D. 5,
Date: March 31, 1927                    Box 1,
Fritzche & Reiser.           Crown Point, Ind."

being defendant's Exhibit 1, and which clearly shows that the membership fee of $250.00 could not be withdrawn. Thereafter he received a certificate which shows on its face that the $250.00 was a membership fee and that appellee was, by the terms of said certificate, entitled to purchase $5,000.00 worth of stock. That at the same time he received a pass book and that he became familiar with the contents thereof about the first part of April, 1927. In November, 1927, appellee went to appellant and asked for his $250.00 stating that he understood from the agents that he could withdraw his money at any time after giving notice; that he was informed by appellant's president that appellee did not have any right to withdraw this money because it was membership stock and the president then showed appellee said Exhibit 1 and inquired, "Isn't this the card you signed when Fritzche (one of the agents) was there?" to which appellee replied, after the additional question "And what did you tell him?" had been propounded, "I told him it was; I told him it was my handwriting." Appellant then informed appellee that in order to get any interest he would be compelled to comply with the conditions of said Exhibit 1. Appellee then told appellant that its agents, who first sold him on the idea of purchasing the stock, had informed him that he would draw interest thereon, to which appellant replied that its agents had never been instructed to sell under those conditions and if they had misrepresented in order to sell that they had no order from it to do so. The evidence disclosed that when appellee executed Exhibit 1 he was told by appellant's agents that such card was merely an identification card.

The appellee called on appellant, in reference to getting his money, several times between November, 1927, and the time suit was brought, to wit: February 16, 1931.

The complaint was in two paragraphs, the first for fraud and deceit, and the second for money had and received. Demurrer was filed alleging misjoinder of causes of action for the reason that the first paragraph sounded in tort and the second in contract, which demurrer was overruled. An answer was filed in three paragraphs, the first a general denial, the second alleged a defense of laches, and the third set up the contract, being said Exhibit 1. This case was set for trial and appellant filed a verified statutory application for change of venue from the county, which application was denied. Trial was then had before a jury and judgment was entered for appellee in the sum of $300.00. Motion for new trial was filed by appellant, containing thirty-three causes, which motion was overruled and this appeal followed.

Errors properly assigned are that the court erred in overruling appellant's demurrer to appellee's complaint; and in overruling appellant's motion for a new trial. The only grounds necessary to be discussed in the motion for new trial are whether or not the verdict of the jury is sustained by sufficient evidence and is contrary to law. This is properly raised and presented in several ways and our conclusion relative thereto is determinative of the case.

A cause of action may be stated by a litigant in different forms in order to prevent a failure of proof and to secure his rights, without being compelled to resort to a second suit. *Snyder* v. *Snyder* (1865), 25 Ind. 399; *Miller, Admr.* v. *White River School Twp.* (1885), 101 Ind. 503. Therefore the appellant's first assignment of error is not a ground

for reversal. And even if there was a misjoinder of causes of action herein, and we are not admitting such to be the fact, such error is harmless for Section 364, Burns 1926, §2-1009, Burns 1933, §113, Baldwin's 1934, says: "No judgment shall ever be reversed for any error committed in sustaining or overruling a demurrer for misjoinder of causes of action." *Morgan* v. *Henry Brick Co.* (1931), 92 Ind. App. 478, 176 N. E. 237; *Coan* v. *Grimes* (1878), 63 Ind. 21.

The record discloses that appellee had attended school and was able to read and write and understand what he read; that he read the card, understood it and ██ signed it. There is nothing to show that appellant's agents attempted to or prevented appellee from reading or ascertaining what it said. Appellee admits signing Exhibit 1 and that he had full opportunity to and did read it. After reading it and in light of the evidence, can he be heard to say that a fraud in law was perpetrated upon him? Being able to read and having read Exhibit 1 he is presumed to have known what it contained and, therefore, had no right to rely on statements made by appellant's agents as to its legal effect. *Clem* v. *Newcastle & D. R. R. Co.* (1857), 9 Ind. 488. In the case at bar Exhibit 1 explicitly says that the $250.00 subscription fee could not be withdrawn from the association, therefore, the alleged statements of the agents that the card was for identification purposes and that the $250.00 could be withdrawn at any time was nothing more than a mere expression of opinion; and though the agents intended to deceive appellee, it was not, in point of law, adequate to that purpose, because the instrument to which he signed his name bound the appellee to its terms. *Clem* v. *Newcastle & D. R. R. Co., supra.*

Exhibit 1 is written in clear, positive, and unambigu-

ous language, within the comprehension of a man. of ordinary intelligence and inasmuch as appellee testified that he could read and understand what he read he is bound by the contents of Exhibit 1 and is presumed to have full knowledge of their meaning. *Fidelity and Casualty Co. of N. Y.* v. *Teter* (1894), 136 Ind. 672, 36 N. E. 283.

Appellee testified that he did not know the agents and never saw them until the day before they approached him and asked that he subscribe for the stock. There is nothing to show that there existed between appellee and the agents a relation of trust and confidence. He had the opportunity to and did avail himself of the right to examine the contract. To allow persons of intelligence and mature age to repudiate their written contracts, which they have an opportunity to read and do read before delivering, would lend an uncertainty to business transactions and render the making of contracts unsafe. *Draeger* v. *Kent County Sav. Assn.* (1928), 242 Mich. 486, 219 N. W. 637.

There is nothing in the record to indicate that appellant ever ratified or confirmed, to the appellee, the alleged acts and statements of its agents and further there is no allegation that said agents ever were authorized by appellant to make such statements. Acts of agents outside of the scope of their employment, unless confirmed by the principal, are not binding upon such principal.

The judgment herein is reversed with instructions to grant the motion for a new trial.

Curtis, J. not participating.

### ON PETITION FOR REHEARING.

KIME, J.—The petition for rehearing is denied with the following memorandum:

Appellee complains that the court erred, in holding that the contract set out in the opinion was complete, for the reason that at the time of the signing of said contract the spaces where the figures $5,000.00, $250.00, and $25.00 appear were blank. Although it may not be clear in the opinion the law in this case was applied with the idea that such spaces were blank at the time of the execution of the contract but that the contract was a complete one at the time it was delivered to appellant. To support this we cite 2 C. J. §§119 and 120, page 1243; 13 C. J. §133 page 308; *Angle* v. *Northwestern Life Ins. Co.* (1876), 92 U. S. 330, 23 Law. Ed. 556; *Thomas* v. *Fursman* (1918), 177 Cal. 550, 171 Pac. 301; *Cassetta* v. *Baima* (1930), 106 Cal. App. 196, 288 Pac. 830.

Curtis, J. not participating.